**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In Re:

**Settlement Facility Dow Corning Trust,**

**Mary O'Neil,**

      **Movant.**

Case No. 00-00005
Honorable Denise Page Hood

_____/

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

On June 1, 2004, the Amended Joint Plan of Reorganization ("Plan") became effective. The Settlement Facility-Dow Corning Trust ("SF-DCT") implements the claims of those claimants who elected to settle their claims under the Plan. The Settlement Fund and Distribution Agreement ("SFA") governs the processing of the claims.

Claimant Mary O'Neil is a rupture claimant before the SF-DCT. On September 24, 1976, Ms. O'Neil was implanted with single lumen silicone gel breast implants manufactured by Surgitek. The right implant was found to be exposed through the surgical scar and was replaced with a Dow Corning single lumen silicone gel breast implant on December 7, 1976. On November 1, 1996, Dr. Sharon Webb removed Ms. O'Neil's implants via bilateral open capsulectomies. Dr. Webb was unable to ascertain the status of the right Dow Corning implant within the intact biologic capsule because of the implant's dense adherence to the previous surgical scar and skin. The Pathologist described the right implant as showing "no gross evidence of ... rupture," but noted the right implant was "distorted" and that the adipose tissue was covered by a tacky material.

On November 6, 1996, Ms. O'Neil's attorney, Frederic L. Ellis, received both implants and mailed them via FedEx Overnight delivery to Dr. Michael Middleton at the University of California,

San Diego, AMI Magnetic Resonance Institute for further evaluation. Dr. Middleton issued a report dated November 20, 1996 in which he determined that Ms. O'Neil's right Dow Corning implant was in a state of uncollapsed rupture.

On October 1, 2004, Ms. O'Neil's rupture claim was submitted to the Settlement Facility–Dow Corning Trust ("SF-DCT"). The rupture claim was denied by the SF-DCT because Ms. O'Neil's medical records do not document rupture. (Ex. 6, O'Neil Br.) Ms. O'Neil submitted additional information and participated in the Individual Review Process. Dr. Middleton clarified the definition of "uncollapsed rupture" as "a hole or defect in the shell was present through which silicone gel was seen to extrude." (Exs. 7 and 8, O'Neil Br.) The Pathologist who examined the breast implants was asked to explain the process and the finding that there was "no gross evidence of implant rupture" but the Pathologist declined to respond to Ms. O'Neil's request.

Appeals were made to the Appeals Judge which were denied. The Appeals Judge's decision dated August 4, 2005 found that neither the Operative Report nor the Pathology Report described the implant as being ruptured and that Dr. Middleton does not describe visual confirmation of a breach in the elastomer envelope. (Ex. 12, O'Neil Br.) In a decision dated October 4, 2005, after Dr. Middleton further defined the term "uncollapsed rupture" to mean an opening in the shell, the Appeals Judge found that nowhere in his reports does Dr. Middleton identify the location of the hole but that Dr. Middleton opined that it could have occurred at the time of explantation. The Appeals Judge concluded that Ms. O'Neil failed to show that there was visual confirmation of a breach in the elastomer envelope prior to or upon explantation. (See, SFA, Annex A § 6.02(3)(vi)(B)(1)); (Exs. 12 and 13, O'Neil Br.) On January 11, 2006, Ms. O'Neil's request for reconsideration was denied by the Appeals Judge.

On July 6, 2006, counsel for Ms. O'Neil filed the instant Motion for Equitable Relief before the Court. A response has been filed by Dow Corning.

**II.    ANALYSIS**

Ms. O'Neil seeks an order from the Court to direct the Settlement Facility to pay the rupture claim, even though Ms. O'Neil has gone through the Independent Review Process and the Appeal Process where her appeal was denied by the Appeals Judge. Ms. O'Neil's brief does not cite any legal authority to support her argument that the Court has equitable powers to direct the Claims Administrator to approve Ms. O'Neil's rupture claim.

Dow Corning argues that the Settlement Program in the Plan is intended to be a settlement process, not a litigation process. Dow Corning argues that the parties negotiated and agreed to the terms of the plan, including the specific proof requirements that would be applied administratively as well as an administrative procedure that achieves finality. Ms. O'Neil proceeded through the various administrative review processes and must be bound by the decision of the Appeals Judge. Dow Corning further argues that the Plan specifically sets forth the necessary proof required to allow a rupture claim and that a non-contemporaneous report of an individual who examined the implant after its removal may not be considered by the SF-DCT. Dow Corning claims that the Plan Proponents did not agree to such proof pursuant to Annex A, § 6.02(e) of the SFA.

Section 8.7 Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the Depository Trust and Settlement Facility and Trust Agreement ("SFA"), and, to enter orders regarding the Plan and Plan Documents. (Plan, § 8.7.3, 8.7.4, 8.7.5)

The Plan provides for the establishment of the SF-DCT, which is governed by the SFA.

3

(Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid. (SFA, § 5.01) The process for resolution of claims is set forth under the SFA and corresponding claims resolution procedures in Annex A. (SFA, § 4.01)

The Plan establishes an administrative claim review and appeals process for Settling Personal Injury claimants. Any claimant who does not agree with the decision of the SF-DCT may seek review of the claim through the error correction and appeal process. (SFA, Annex A, Art. 8) A claimant may thereafter obtain review by the Appeals Judge. (SFA, Annex A, Art. 8) The Plan provides that "[t]he decision of the Appeals Judge will be final and binding on the Claimant." (SFA, Annex A, § 8.05) Claimants who seek review under the Individual Review Process also have a right to appeal directly to the Appeals Judge. The Plan provides that "[t]he decision of the Appeals Judge is final and binding on both Reorganized Dow Corning and the claimant." (SFA, Annex A, § 6.02(vi))

The Plan provides no right to appeal to the Court and expressly sets forth that the decision of the Appeals Judge is final and binding on both the Reorganized Dow Corning and the claimants. Allowing an appeal to go forward and directing the Claims Administrator to pay the rupture claim would be a modification of the Plan language. Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a). Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan. 11 U.S.C. § 1127(b).

In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors. *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); *see, Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993). State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations. 456 F.3d at 676. A term is deemed ambiguous when it is "capable of more than one reasonable interpretation." *Id.*

The Plan's language is clear and unambiguous that the decision of the Appeals Judge is final and binding on the claimants and the Reorganized Dow Corning. The Court has no authority to modify this language. Although bankruptcy courts have broad equitable powers that extend to approving plans of reorganization, these equitable powers are limited by the role of the bankruptcy court, which is to "guide the division of a pie that is too small to allow each creditor to get the slice for which he originally contracted." *Id.* at 677-78 (quoting *In re Chicago,* 791 F.2d 524, 528 (7th Cir.1986)). "A bankruptcy court's exercise of its equitable powers is cabined by the provisions of the Bankruptcy Code." *Id.* at 678 (citing *In re Highland Superstores, Inc.,* 154 F.3d 573, 578-79 (6th Cir.1998)). Ms. O'Neil has not shown that the Court has the authority to exercise its equitable powers outside the unambiguous Plan language. The Court cannot consider Ms. O'Neil's request to review the Appeals Judge's decision denying her claim.

As to whether or not the SF-DCT should consider an expert report to show rupture, Dow Corning and the Claimants' Advisory Committee ("CAC") have notified the Court since the filing of the instant motion that they are attempting to resolve this issue and, if necessary, will invoke the June 11, 2004 Stipulation and Order Establishing Procedures for Resolution of Disputes Regarding

Interpretation of the Amended Joint Plan ("Procedures").  Section 5.05 of the SFA provides that the Debtor's Representatives and the CAC may submit joint interpretations and clarifications regarding submissions of claims to the Claims Administrator.  If there is a dispute between the Debtor's Representatives and the CAC, the Claims Administrator may resolve the issue or the issue may be raised before the Court by way of a motion pursuant to the June 11, 2004 Procedures.  Section 2.01 of the Procedures provides that "these procedures will apply to disputes arising out of the interpretation or application of the Claims Resolution Procedures–Annex A to the Settlement Facility Agreement–and any claims operations functions set out in the Settlement Facility Agreement."  (Plan Interpretation Procedures, § 2.01(a))   After a meet and confer period and submitting the issue before the Claims Administrator, either party may bring the matter before this Court.  (Plan Interpretation Procedures, § 2.01(c) and (d))  The SFA and the Procedures authorize only the Debtor's Representatives and the CAC to file a motion to interpret a matter under the SFA.  There is no provision under the SFA or the Procedures which allows a claimant to submit an issue to be interpreted before the Court.

Because the parties have agreed to resolve the issue of whether an expert opinion may be used to determine rupture through the Procedures set forth in the June 11, 2004 Order and the matter has not been raised before the Court by the parties in accordance with the Procedures, the Court will not interpret the expert opinion issue raised by Ms. O'Neill at this time.  Ms. O'Neill, as a claimant, does not have the authority under the SFA or the Procedures to raise an interpretation issue before the Court.

III.     **CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Motion for Equitable Relief re: O'Neill Rupture Claim (**Doc. No. 422, 7/6/2006**) is DENIED.

                                      */s/ Denise Page Hood*
                                      DENISE PAGE HOOD
                                      UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

---

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on this date, March 31, 2008, by electronic means and/or first class U.S. mail.

                                      S/Sakne Srour
                                      Deputy Clerk