**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**In Re:**

**Settlement Facility Dow Corning Trust,**

**Clients of Siegel, Kelleher & Kahn,**

        **Movants.**

_____/

Case No. 00-00005

Honorable Denise Page Hood

## MEMORANDUM OPINION AND ORDER

**I.    BACKGROUND**

On behalf of their clients, the law firm of Siegel, Kelleher & Kahn ("SKK") filed a Motion for Expedited Consideration for Tolling of Rupture Deadline; Request for a Six Month Extension for Curing Past and Future Deficiencies; and to Compel Acceptance of Expert Affidavits in Regards to Proof of Rupture Claims. SKK redacted its clients' name from the filed motion but the Court received an unredacted copy of motion listing SKK's clients. A response was filed by the Claims Advisory Committee ("CAC") in support of SKK's motion. The Reorganized Debtor, Dow Corning Corporation, filed a response opposing SKK's motion.

On June 1, 2004, the Amended Joint Plan of Reorganization ("Plan") became effective. The Settlement Facility-Dow Corning Trust ("SF-DCT") implements the claims of those claimants who elected to settle their claims under the Plan. The Settlement Fund and Distribution Agreement ("SFA") governs the processing of the claims. The deadline to file a rupture claim was June 1, 2006 and that in order to receive rupture compensation, the claimant must have undergone explantation surgery. SKK seeks an order extending the deadline on behalf of its clients and for the SF-DCT Claims Administrator to accept expert reports to show rupture.

At the January 25, 2007 hearing in this matter, SKK withdrew its request on behalf of its

clients for an extension to cure the deficiencies and to find physicians to explant the implants since orders have been entered extending the cure deadlines since the filing of the motion. SKK's arguments at the hearing related to its request to interpret the Plan language regarding the deadline of filing a rupture claim of June 1, 2006, the Claims Administrator's refusal to accept expert proof of rupture and a new argument not raised in its brief regarding the Individual Review Process of rupture claims performed by Dow Corning.

## II. ANALYSIS

### A. Extension of June 1, 2006 Rupture Claim Filing Deadline

Many of SKK's clients are awaiting payments from their disease claims in order to pay for explantation surgery and did not receive their disease claim payments until after the June 1, 2006 rupture claim deadline. Some are still awaiting payment for explantation surgery after the June 1, 2006 rupture claim deadline. With regards to SKK's clients in Western New York, only one (1) surgeon is willing to perform explant surgery and that there are few plastic surgeons in the country who are willing to get involved. SKK is seeking an extension of six months for its clients to file rupture claims. SKK notes that the parties agreed to extend the rupture deadline for one particular claimant, Shirley Coyne. The CAC concurs in SKK's request to extend the deadline. Other than noting the Court's inherent power and authority as the judge supervising the implementation of the Plan, SKK does not cite any legal authority to support its arguments on behalf of its clients.

In response, Dow Corning argues that the fact that the rupture deadline was extended for one particular claimant does not warrant the wholesale extension of the rupture deadline. In the case of Shirley Coyne, Dow Corning and the CAC agreed to extend the deadline since after further investigation into her claim it was revealed that Ms. Coyne had filed an explant assistance claim and

2

was eligible for one of the express exceptions to the filing deadline set forth in the Plan. By contrast, Dow Corning argues that SKK has not shown that any of its clients are covered under any Plan exception.

Dow Corning further argues that the Plan, including the SFA, can only be amended by written agreement of the parties and after court approval under § 10.06 of the SFA.

Section 10.06 of the SFA Agreement provides:

> **10.06 *Amendments*.** This Agreement may be amended to resolve ambiguities, make clarifications or interpretations or to correct manifest errors contained herein by an instrument signed by the Reorganized Dow Corning and the Claimants' Advisory Committee. All other amendments, supplements, and modifications shall require approval of the Court after notice to the Reorganized Dow Corning, the Shareholders, and the Claimants' Advisory Committee and such other notice and hearing as the Court may direct, *provided that without the prior written consent of the Reorganized Dow Corning and the Claimants' Advisory Committee the Agreement shall not be amended, supplemented or modified if such amendment, supplement, or modification would, directly or indirectly: (i) increase the liquidation value or settlement value of any Claim, or the amount or value of any payment, award or other form of consideration payable to or for the benefit of a Claimant, including, without limitation, any cash payment or other benefits provided to a Claimant,* (ii) affect the validity, requirement for or effectiveness of any release of the Released Parties, or any of them, (iii) increase the amount or change the due date of any payment to be made by the Debtor to the Settlement Facility pursuant to the Plan or the Funding Payment Agreement, (iv) affect the right of the Settlement Facility to receive payments pursuant to the Insurance Allocation Agreement, or (v) cause the Trust to no longer qualify as a Qualified Settlement Fund.

SFA, § 10.06 (italics added).

Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a). Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after

3

confirmation of such plan and before substantial consummation of the plan. 11 U.S.C. § 1127(b). In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors. *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); *see, Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993). State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with the parties' prior obligations. *Id.* A term is deemed ambiguous when it is "capable of more than one reasonable interpretation." *Id.*

Interpreting § 10.06 pursuant to contract interpretation principles, SKK has not shown that the terms in § 10.06 providing that Dow Corning and the CAC must agree in writing to any modifications under the Plan which would directly or indirectly increase the liquidation value or settlement value of any claim are ambiguous. Dow Corning and the CAC have not, to date, agreed in writing to extend the June 1, 2006 rupture deadline although it appears from the CAC's motion to extend the June 1, 2006 deadline that they are discussing this issue.[1] Extending the June 1, 2006 rupture deadline may increase the liquidation value and settlement value of any claim since extending the deadline may increase the number of rupture claims. Although the CAC seeks to extend the June 1, 2006 rupture filing deadline, without agreement between Dow Corning and the CAC, the Court does not have the authority to extend the June 1, 2006 deadline.

### B.   Disclosure of Claims Administrator's Criteria

---

[1] The CAC's Motion to Extend the June 1, 2006 deadline (Doc. No. 400) has been held in abeyance pending the parties' negotiations regarding the issue.

4

SKK claims that some of its clients who submitted rupture claims prior to June 1, 2006 have had their claims denied arbitrarily. SKK claims that claimants who underwent explantation prior to January 1, 1992 are only required to submit an operative report in order to establish a rupture claim. Claimants who underwent explantation after January 1, 1992 but prior to the Effective Date of June 1, 2004 must submit an operative report and a pathology report to support a rupture claim. After June 1, 2004, claimants must submit an operative report, a pathology report and a statement by their surgeon attesting that the rupture did not occurring during surgery. SKK claims that the substantive criteria created, adopted and/or being applied by the Claims Administrator is not fully known and that the inconsistent treatment by the Claims Administrator of rupture claims necessitates disclosure of the criteria.

In response, Dow Corning argues that there is nothing arbitrary about the SF-DCT's processing of rupture claims. The SF-DCT is simply applying the criteria set forth in the Settlement Facility Agreement, Annex A, § 6.02(e)(iii). Dow Corning claims that the parties, in negotiating this provision, agreed to a more rigorous requirement requiring the submission of an operative and pathology report for those claimants explanted after the Effective Date since those claimants are on notice of the need for additional documentation. Dow Corning further argues that SKK's broad request for disclosure violates both the fundamental premise and structure of the Plan as well as a prior Order of this Court that the Claims Administrator's actions in evaluating and paying the claims constitute judicial actions and is subject to the doctrine of judicial immunity. (*See* Order Approving Elizabeth W. Trachte-Huber As Successor Claims Administrator Pursuant to the Settlement Facility and Fund Distribution Agreement (Nov. 29, 2000)).

Annex A provides:

**(ii)** *Eligibility.* To be eligible under the Rupture Payment Option, Eligible Breast Implant Claimants must submit:

    **a.**    acceptable proof of implantation with one or more Dow Corning silicone gel Breast Implants in accordance with Schedule I, Part I and;

    **b.**    documentation that a Dow Corning silicone gel Breast Implant has been removed; and

    **c.**    documentation, as specified at subparagraph (v) below, showing that the removed Dow Corning silicone gel Breast Implant was ruptured as defined above.

**(iii)** *Rupture Proof.*

    **a.**    Breast Implant Claimants explanted prior to January 1, 1992 must submit a contemporaneous operative <u>or</u> pathology report documenting the Rupture.

    **b.**    Breast Implant Claimants explanted on or after January 1, 1992 and on or before the Effective Date must submit a contemporaneous operative report and, if available, a pathology report together with a statement as to whether the ruptured implants have been preserved and, if so, the name and address of the custodian.

    **c.**    **1.**    Breast Implant Claimants explanted after the Effective Date must submit a contemporaneous operative report <u>and</u>, if available, a contemporaneous pathology report. <u>In addition</u>, the Claimant must provide a statement from the explanting surgeon (or other appropriate professional approved by the Claims Office) affirming that, in his or her opinion, the Rupture did not occur during or after the explantation procedure. This statement must describe the results of the inspection and provide a factual basis for the opinion (e.g., in light of silicone granuloma formation on the exterior of the biologic capsule, or findings concerning the nature of the destruction of the elastomer envelope). The Claimant shall use her best efforts to cause the removed implant to be preserved.

        **2.**    If the explanting surgeon refuses to write the supplemental report giving his or her opinion of when the Rupture occurred, the Claimant may submit the supplemental statement from another doctor who examined the removed implant. Claimants must

> also submit the contemporaneous operative report that documents the Rupture and, if available, a contemporaneous hospital report.

SFA, Annex A, § 6.02(e)(ii) and (iii).

A review of § 6.02(e) above shows that the SF-DCT is following the provision governing the proof required to establish rupture. Dow Corning and the CAC agreed to the language above differentiating the proof required by rupture claimants whose implants were explanted prior to and after the Effective Date. SKK has not shown that disclosure of any other criteria used by the SF-DCT is required since the proof of rupture requirement is expressly set forth in § 6.02(e). SKK also has not shown any provision under the Plan that requires disclosure of the criteria used by the SF-DCT.

### C. Denial of Rupture Claims

Dow Corning argues that SKK appears to be seeking review of the SF-DCT's denials of rupture claims which is not permitted under the Plan.

Section 8.7 of the Plan states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and to enter orders regarding the Plan and Plan Documents. (Plan, § 8.7.3, 8.7.4, 8.7.5) The Plan provides for the establishment of the SF-DCT, which is governed by the SFA. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid. (SFA, § 5.01) Resolution of the claims are set forth under the SFA and corresponding claims resolution procedures in Annex A. (SFA, § 4.01)

The Plan establishes administrative claim review and appeals process for Settling Personal Injury claimants. Any claimant who does not agree with the decision of the SF-DCT may seek

review of the claim through the error correction and appeal process. (SFA, Annex A, Art. 8) A claimant may thereafter obtain review by the Appeals Judge. (SFA, Annex A, Art. 8) The Plan provides that "[t]he decision of the Appeals Judge will be final and binding on the Claimant." (SFA, Annex A, § 8.05) Claimants who seek review under the Individual Review Process also have a right to appeal directly to the Appeals Judge. The Plan provides that "[t]he decision of the Appeals Judge is final and binding on both Reorganized Dow Corning and the claimant." (SFA, Annex A, § 6.02(vi))

The Plan provides no right to appeal to the Court and expressly sets forth that the decision of the Appeals Judge is final and binding on both the Reorganized Dow Corning and the claimants. Allowing the appeal to go forward and to direct the Claims Administrator to pay a denied rupture claim would be a modification of the Plan language. The Plan's language is clear and unambiguous that the decision of the Appeals Judge is final and binding on the claimants and the Reorganized Dow Corning. SKK has not shown that the Court has any authority to modify this language. At the hearing in this matter, SKK agrees that an appeal to the Appeal's Judge is final and non-appealable, therefore, SKK chose to raise this issue before the Court by way of the instant motion. Although bankruptcy courts have broad equitable powers that extend to approving plans of reorganization, these equitable powers are limited by the role of the bankruptcy court, which is to "guide the division of a pie that is too small to allow each creditor to get the slice for which he originally contracted." *In re Dow Corning,* 456 F.3d at 677-78 (quoting *In re Chicago,* 791 F.2d 524, 528 (7th Cir.1986)). "A bankruptcy court's exercise of its equitable powers is cabined by the provisions of the Bankruptcy Code." *Id.* at 678 (citing *In re Highland Superstores, Inc.,* 154 F.3d 573, 578-79 (6th Cir.1998)).

In this case, the plan of reorganization has been approved and the Court must now interpret any plan language pursuant to law governing contract interpretation. SKK has not shown that the Court has the authority to exercise its equitable powers outside the unambiguous Plan language. The Court has no authority to review the SF-DCT's decision denying any rupture claim by way of an appeal from the Appeals Judge's decision or by way of a motion before the Court.

**D.     Expert Report**

SKK argues that the SF-DCT should be able to use an expert report regarding rupture. SKK also raised a new argument at the hearing that the Individual Review Process performed by Dow Corning should also use an expert's report in its review.

The CAC agrees with SKK's position. The CAC argues that expert reports represent the "gold standard" for determining rupture. The CAC claims that because the Plan language does not prohibit the use of expert reports, such reports can be used in determining whether a rupture has occurred. The CAC cites Annex A, § 6.02(e)(vii), to show a list of unacceptable proof, such as: a) non-contemporaneous statements from medical personnel or claimant or claimant's family and friends recalling that the breast implant was ruptured upon explantation; b) proof that fails to show the ruptured breast implant has been surgically removed; c) proof that affirmatively reveals that the implant was intact before the explant surgery, but was ruptured during the explant surgery; d) proof that reveals no rupture; e) proof that shows that only the saline portion of a double-lumen breast implant ruptured, leaving the gel portion intact; and, f) for explantations after January 1, 1992, a pathology report alone, with no contemporaneous operative report. The CAC argues that because an expert report is not listed under this section, such report should be considered as an acceptable proof of rupture. The CAC also cites to the opinion of Dr. Blais on the issue of rupture.

9

In response, Dow Corning argues that the use of expert reports is not provided under the Plan language. Dow Corning claims that the CAC appears to go beyond the vigorously negotiated Plan language regarding rupture claims. Because Dow Corning and the CAC have not agreed to allow expert reports there is no authority to allow an expert report to be considered by the SF-DCT to show rupture. Without contemporaneous proof, complex evidentiary issues and chain of custody questions arise, making it difficult, if not impossible to determine whether there was a qualifying rupture of an implant. Dow Corning claims that the use of experts are for litigation purposes and should not be used in the settlement process before the SF-DCT. Even if expert reports are not listed under the unacceptable proof section, the provision in § 6.02(e)(iii) expressly provides "contemporaneous" reports. Dow Corning argues that expert review and reports performed after the surgery does not meet the "contemporaneous" report requirement under § 6.02(e)(iii).

Dow Corning responded at the hearing regarding the Individual Review Process that a claimant can elect to have Dow Corning review a rupture claim under the Individual Review Process but such a review is not substitute of a review by the Claims Administrator. Dow Corning argues that under the Individual Review Process, Dow Corning looks at the totality of the circumstances surrounding the rupture and does not have to meet the same criteria as the Claims Administrator under the Plan.

At the hearing in this matter, the CAC indicated that since the filing of its response, it has reviewed the plan interpretation procedures and agreed with Dow Corning that individual claimants, such as SKK's clients, cannot raise a plan interpretation issue. The CAC cited the June 11, 2004 (Doc. No. 53) Stipulation and Order Establishing Procedures for Resolution of Disputes Regarding Interpretation of the Plan ("Procedures"). The CAC stated that plan interpretation issues regarding

claim processing must be first raised before the Claims Administrator.

Section 5.05 of the SFA provides that the Debtor's Representatives and the CAC may submit joint interpretations and clarifications regarding submissions of claims to the Claims Administrator. If there is a dispute between the Debtor's Representatives and the CAC, the Claims Administrator may resolve the issue or the issue may be raised before the Court by way of a motion pursuant to the June 11, 2004 Procedures. Section 2.01 of the Procedures provides that "these procedures will apply to disputes arising out of the interpretation or application of the Claims Resolution Procedures–Annex A to the Settlement Facility Agreement–and any claims operations functions set out in the Settlement Facility Agreement." (Plan Interpretation Procedures, § 2.01(a))  After a meet and confer period and submitting the issue before the Claims Administrator, either party may bring the matter before this Court. (Plan Interpretation Procedures, § 2.01(c) and (d))  The SFA and the Procedures authorize only the Debtor's Representatives and the CAC to file a motion to interpret a matter under the SFA. There is no provision under the SFA or the Procedures which allows a claimant to submit an issue to be interpreted before the Court.

Because the parties have agreed to resolve the issue of whether expert opinion may be used to determine rupture through the Procedures set forth in the June 11, 2004 Order and the matter has not been raised before the Court by the parties in accordance with the Procedures, the Court will not interpret the expert opinion issue raised by SKK at this time. SKK, on behalf of its clients, does not have the authority under the SFA or the Procedures to raise an interpretation issue before the Court.

**III.    CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Motion of the Clients of Siegel, Kelleher & Kahn for Expedited Consideration for Tolling of Rupture Deadline; Request for Curing Past and Future Deficiencies; and to Compel Acceptance of Expert Affidavits in Regards to Proof of Rupture Claims (**No. 399, 5/31/2006**) is DENIED.

*/s/ Denise Page Hood*
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

---

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on this date, March 31, 2008, by electronic means and/or first class U.S. mail.

S/Sakne Srour
Deputy Clerk