UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**In Re:**

**Settlement Facility Dow Corning Trust.**

                                                Case No. 00-00005
                                                Honorable Denise Page Hood

_____/

**MEMORANDUM OPINION AND ORDER
REGARDING BREAST TISSUE EXPANDER ISSUE ON REMAND**

**I.    BACKGROUND[1]**

This matter is before the Court on remand from the Sixth Circuit Court of Appeals directing the Court "to assess the relevant extrinsic evidence" in interpreting whether the term breast "tissue expanders" is included in the definition of "breast implant" in Section 1.17 of the June 1, 2004, the Amended Joint Plan of Reorganization ("Plan"). *In re Settlement Facility Dow Corning Trust,* 628 F.3d 769, 773 (6th Cir. 2011). The Reorganized Debtor Dow Corning Corporation ("Dow Corning") and the Claimants' Advisory Committee ("CAC") submitted supplemental briefs and an Agreed Joint Index of Materials Relating to the Tissue Expander Remand.

---

[1] See *In re Dow Corning Corp.,* 456 F.3d 668 (6th Cir. 2006) for further background of the bankruptcy proceedings.

## II. ANALYSIS

### A. Applicable Law

New York law governs the interpretation of the Plan. (Plan, § 6.13) Under New York law, when a term is ambiguous, parties may submit extrinsic evidence as an aid in construction. *Geothermal Energy Corp. v. Caithness Corp.,* 825 N.Y.S.2d 485, 489 (N.Y. App. Div. 2006). The court must examine relevant extrinsic evidence in order to ascertain the parties' intent. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 597 (6th Cir. 2001)(Interpreting New York law). The objective is to determine the parties' intention at the time they entered into the contract as derived from the language used in the contract. *Evans v. Famous Music Corp.,* 1 N.Y.3d 452, 458 (2004). *Id.* This Court, retaining jurisdiction "to resolve controversies and disputes regarding interpretation" of the Plan and the Plan Documents, may choose "among reasonable inferences to be drawn from the extrinsic evidence" submitted in order to ascertain the parties' intent. (Plan, §§ 8.7.3, 8.7.4, 8.7.5; *Popovich v. Sony Music Entertainment, Inc.*, 508 F.3d 348 (6th Cir. 2007)(quoting New York law)).

### B. Plan Language

The language of the Plan provides that to receive benefits under Classes 5, 6.1 or 6.2, claimants must have been implanted with a "Breast Implant." The parties did not define the term "Tissue Expander" in the Plan. The parties did not expressly

include the term "Tissue Expander" in the "Breast Implant" definition, nor in the "Other Products" definition. Section 1.17 of the Plan defines "Breast Implant":

> **"Breast Implant"** means all silicone gel and saline-filled breast implants with silicone elastomer envelopes manufactured and either sold or otherwise distributed by the Debtor.

(Plan, § 1.17). Section 1.117 of the Plan defines "Other Products":

> "**Other Products**" means metal, silicone or silicone-containing products, other than Breast Implants and raw materials used in the manufacture of a Non-Dow Corning Breast Implant or a Non-Dow Corning Implant, manufactured by the Debtor or any of its Joint Ventures or Subsidiaries for implant into humans, including, but not limited to: (a) reconstruction and aesthetic surgery products (including custom implants) such as facial components, nasal and chin implants, testicular and penile implants, or medical treatments, (b) orthopedic products such as for use in legs, hips, knees, ankles, wrists, hands, fingers, toes and wrists, (c) silicone temporomandibular joint (TMJ) implants using medical grade or HP sheeting, the Wilkes implant or Silastic Block, (d) medical products for use in the head, heart or eyes, and (e) fluids. The inclusion of fluids among Other Products is not an admission of any Dow Corning responsibility for, or the potential for Allowance of Claims relating to, silicone injections.

(Plan, § 1.117).

This Court is tasked with determining whether the parties intended for breast tissue expanders to be covered under the term "Breast Implant" based on the extrinsic evidence submitted by the parties.

### C. The Terms Mean Different Things

Dow Corning first argues that the terms "Breast Implant" and "Tissue

Expander" mean different things, which is not disputed by the CAC. Dow Corning submits the affidavit of Gene Jakubczak, its medical device operations manager, to support its argument that the term "Breast Implant" does not include "Tissue Expander." The evidence submitted by Dow Corning is not relevant to the Court's determination of whether the parties intended "Tissue Expander" claimants be given benefits under the "Breast Implant" provision. This Court, the Sixth Circuit and the parties all agree the terms mean different things. The Court is well aware that all the parties in this matter have been involved in many aspects of the "breast implant" litigation since the early 1990s. There is no dispute that the terms "Breast Implant" and "Tissue Expander" mean different things.

To make clear, the issue before this Court is whether the parties *intended* breast tissue expanders to be covered under the "Breast Implant" provision. As the Sixth Circuit noted, "[t]he only element of the definition that is disputed, therefore, is whether the subject expanders were 'breast implants' as the term is used in the definition.'" *In re Dow Corning*, 628 F.3d at 773.

### D.    Expert Report

Dow Corning argues that Dr. Frederick Dunbar's expert report presented at the confirmation hearing is evidence that the parties' intended breast tissue expanders to be covered under the "Other Products" provision. (JI-7) Dow Corning asserts that Dr.

Dunbar's analysis did not incorporate an estimate of the cost of paying tissue expander claimants the payment prescribed for "Breast Implant" claimants. The CAC responds that while Dr. Dunbar did not specifically estimate the cost of paying tissue expander implant claims, it does not follow that his analysis completely excluded their impact. Because the parties relied upon the MDL-926 Revised Settlement Program ("RSP") claims experience to predict costs under the Plan, the CAC asserts that the parties "of necessity [] took into account claims experience with other manufacturers' tissue expander implants." (CAC Br., Doc. No. 783, p. 8) The CAC claims that the breast tissue expanders were treated the same as breast implants.

The CAC further argues that the confirmation hearing did not separately focus on tissue expander implants and Dr. Dunbar was not required to estimate the separate value of such claims which would have no conceivable impact on the viability of the Plan or the adequacy of its funding. Although Dr. Dunbar identified 1,041 potential tissue expander claims, the CAC argues that discounting for non-breast tissue expanders and products produced by other manufacturers, a much smaller number of Dow Corning tissue expander breast implant claims will likely qualify for payment, with negligible potential impact on the $1.95 billion net present value of the Settlement Fund. The CAC does not seek to include all types of tissue expanders under the term "Breast Implant," but only those that are implanted in the breasts.

The Court finds Dr. Dunbar's report relevant and credible. However, as noted by the CAC, the specific tissue expander claims at issue were not specifically raised at the confirmation hearing. Although Dr. Dunbar was presented as a witness for the Plan Proponents, the CAC asserts that the Tort Claimants' Committee had no role in the preparation and presentation of his analysis. Dow Corning argues that the report shows tissue expanders fall under the "Other Products" provision as an uncovered product because Dr. Dunbar did not incorporate an estimate for tissue expanders. If the parties intended to include tissue expanders under the "Other Products" provision, the same argument Dow Corning raises that tissue expanders should have been listed under the term "Breast Implant" could be made–that tissue expanders should have also been listed under the term "Other Products." The parties could have easily listed tissue expanders under "Other Products," especially since Dr. Dunbar listed tissue expanders in his analysis under "Other Products." However, the parties did not list tissue expanders under the term "Other Products" in the Plan definition or other Plan documents.

Although the Court finds Dr. Dunbar's expert report relevant, it does not go to the ultimate question of what the parties *intended* to do with Dow Corning breast tissue expanders. It may be that the reason tissue expanders were not given any estimate under other products by Dr. Dunbar was that the parties' intended for Dow

Corning tissue expanders to be covered under the "Breast Implant" provision because the parties understood that the Plan was based on the RSP experience. The Plan documents are specific as to what types of "Other Products" are to be covered or not covered. The lists may not be exclusive, but the listed "Other Products" appear to be products which are not implanted into the breast region. The tissue expanders at issue are implanted in the breast region.

### E. MDL-926 RSP Experience

The CAC's main argument is that Dow Corning Claimants were specifically told that the Plan's offers would be the same as those in the RSP, except where the Dow Corning Plan documents specified different treatment. Since the breast tissue expanders at issue were included in the RSP, the CAC argues it was presumed that these were included under the Dow Corning Plan. The CAC argues that the SILASTIC brand under which Dow Corning marketed its breast design tissue expanders was expressly included as a qualifying brand, therefore failing to list the product by name and model does not indicate that the breast tissue expanders were not included under the breast implant provision.

Dow Corning argues that because the other settlement programs expressly listed their own tissue expanders, this is strong evidence that Dow Corning's tissue expanders were not intended to be included in the Plan since the parties knew how to

write an inclusive definition. Both parties do know how to write inclusive definitions, and they did so in the definition of "Other Products" and by listing various specific products in other Plan documents. It is curious that both parties failed to include the tissue expanders language in any of the provisions, either under "Breast Implant" or "Other Products." It is reasonable to infer that such failure was based on the RSP experience and the other settlement programs, wherein the tissue expanders implanted in the breasts were included as breast implants and so the parties intended for these breast tissue expanders to be included in the Plan's "Breast Implant" provision

At the time the Plan was drafted and eventually signed, what did the parties know? All agree that other breast implant mass tort cases arising from the MDL-926 and contemporaneous with the RSP, in which Dow Corning initially participated, included the breast tissue expanders in the definition of "Breast Implant." Throughout the Plan documents, the Claims Administrator is instructed to apply the protocols and procedures developed in connection with the Revised Settlement Program for evaluating proof of manufacturer and claims. (SFA, Annex A, pp. 56, 87) The SFA provides that, "[i]t is expressly intended that the Settling Breast Implant Claims shall be processed in substantially the same manner in which claims filed with the MDL 926 Claims Office under the Revised Settlement Program were processed except to the extent criteria or processing guidelines are modified by this Settlement Facility

8

Agreement or the Claims Resolution Procedures, or this Section 4.03, and that the Claims Office shall manage its operations to the extent feasible as they have been conducted under the Revised Settlement Program." (SFA, § 4.03(a)) All parties agree that in the RSP and related settlement programs, each manufacturer's breast tissue expanders were processed in the same manner as its own breast implants. Dow Corning has not submitted any evidence that breast tissue expanders were not considered breast implants in those programs.

The Court finds that the parties' knowledge of the RSP experience and the RSP reference throughout the Plan documents is strong evidence that the parties intended to evaluate breast tissue expanders in the same manner as breast implants. Drawing reasonable inferences from the submitted evidence, the Court finds that the intent of the parties was to include the breast tissue expanders under the "Breast Implant" provision.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the breast tissue expanders are included in the term "Breast Implant" under the Plan.

 */s/ Denise Page Hood*  
DENISE PAGE HOOD

                                                        United States District Judge

DATED: October 8, 2013