# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**In Re:**

        Case No. 00-00005

   **Settlement Facility Dow Corning Trust.**

        Honorable Denise Page Hood

_____/

## ORDER GRANTING MOTION TO STAY PENDING APPEAL

**I.    BACKGROUND**

This matter is before the Court on a Motion to Stay the Court's Ruling Granting the Finance Committee's Motion for Authorization to Make Second Priority Payments Pending Appeal filed by Dow Silicones Corporation f/k/a Dow Corning Corporation ("Dow Corning") and the Debtor's Representatives (collectively, "Dow Corning"). The Finance Committee, the proponent of the Fifty Percent Premium Payment Distribution, filed a response recommending that the payments not be distributed immediately. The Claimants' Advisory Committee ("CAC") filed a response opposing the Motion to Stay. Reply briefs have been filed.

In *In re Settlement Facility Dow Corning Trust,* 692 F. App'x 473 (6th Cir. Jan. 27, 2015), the Sixth Circuit held that the district court could authorize second priority payments only if there was a "virtual guarantee" that "adequate protection has been

made to assure" that all future higher priority payments could be made "based on available assets." On December 27, 2017, the Court entered a Memorandum Opinion and Order Granting the Finance Committee's Motion for Authorization to Make Secondary Priority Payments finding there existed a "virtual guarantee" to authorize the second priority payments. (ECF No. 1346) A Notice of Appeal was filed on January 25, 2018 by Dow Corning. (ECF No. 1360)

## II. ANALYSIS

### A. Standard Governing Stay Pending Appeal

Rule 8(a) of the Federal Rules of Appellate Procedure provides that a party seeking a stay of an order must first request a stay from the district court. The following four factors are weighed in order to determine whether a stay pending appeal should be issued: 1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; 2) the likelihood that the moving party will be irreparably harmed absent the stay; 3) the prospect that others will be harmed if the court grants the stay; and 4) the public interest in granting the stay. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These factors should be balanced in light of the overall circumstances of the case. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985). The party requesting a stay bears the burden of showing that the circumstances justify the stay. *Overstreet*

*v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

## B. Likelihood of Success

Dow Corning argues that it has met the first factor since the questions on the merits are serious in that "the interpretation of the relevant Plan provision has been subject of at least 17 briefs, over 80 exhibits, two district court hearings and one appeal." (Doc. No. 1361, Pg ID 22082) Dow Corning claims that the consequence of a mistaken distribution would be significant and unjustifiable because higher priority claimants who have a paramount right to funds could receive no compensation while the lower priority claims would receive extra payments to which they are not legally entitled. Dow Corning notes that the parties agree the Sixth Circuit ruled that the "virtual guarantee" standard means the risk of error must be nearly non-existent, approximating 1% probability. However, Dow Corning asserts that the Independent Assessor Report the Court relied upon does not provide the requisite quantification and cannot provide a reliable basis for a finding that First Priority Payments would be "virtually guaranteed."

The CAC responds that this appeal concerns only the straightforward application of the Sixth Circuit's heightened "virtual guarantee" standard to the current facts before this Court. The CAC argues that on the "bottom line question" of whether this Court clearly erred in finding that there was a virtual guarantee of

sufficient funding, Dow Corning offers no scenario, much less a plausible one, under which the IA's projections could be off by $300 million in the short time remaining in this settlement. The CAC asserts that this Court appropriately based its approval of the Finance Committee's recommendation on the IA's projections as required by the Plan.

The Finance Committee's response did not address the likelihood of success factor.

A party seeking a stay pending appeal is "required to show, at a minimum, 'serious questions going to the merits.'" *In re DeLorean*, 755 F.2d at 1229. This Court finds that Dow Corning has not shown "serious questions going to the merits." Generally, "[i]n interpreting a confirmed plan, courts use contract principles[.]" *In re Dow Corning Corp.,* 456 F.3d 668, 676 (2006). The Sixth Circuit gives the "district court significant deference with respect to its assessment of extrinsic evidence." *In re Settlement Facility,* 692 F. App'x at 477.

In this instance, the Court applied the Sixth Circuit's interpretation of the term "virtual guarantee" to the facts and data before it, including the Independent Assessor's analysis and the criticisms of the analysis submitted by Dow Corning, to determine whether second priority payments could be issued. The Court reviewed the Independent Assessor's analysis and the criticisms thereto, concluding that there is a

4

"virtual guarantee" to protect the allowed and allowable first priority claims even if the fifty percent of the second priority payments be made at this time. In light of the Court's analysis, Dow Corning has not shown "serious questions" going to the Court's findings based on the Independent Assessor's analysis and the criticisms thereto. However, the Court does not take lightly the Sixth Circuit's previous more stringent opinion.

    **C.**    **Irreparable Harm to Movant**

Dow Corning argues that based on Section 4.09(c)(v), it has the right to file a motion to enforce or be heard as to any Plan obligations. Dow Corning asserts that the higher priority claimants would be irreparably harmed if immediate distribution of the second priority payments were made because they will not be paid in full. Dow Corning claims that the risk exceeds 1% and the misallocation of a limited fund violates the Plan.

The CAC responds that Dow Corning cannot show irreparable injury since the claimants are entitled to the Premium Payments. The CAC notes that there is no dispute that the claimants are entitled to the Premium Payments. The issue on appeal is not that the payments are not allowed under the Plan, but whether there is adequate funding at this time to distribute the payments. The CAC argues that Dow Corning itself, the moving party, cannot show irreparable injury since $130 million remains in

the Trust, which is the residual amount not yet paid out form Dow Corning's $1 billion initial payments. The CAC claims that any payments while the appeal is pending, including the allowed second priority payments and other immediate payable claims in the Trust, total less than $40 million, citing Dow Corning's own submissions. The CAC asserts that Dow Corning's argument that "future first priority claims" are at risk is not supported by the record because the record shows that there is a $300 million cushion based on dwindling claim flow and the short time remaining in the settlement.

The Finance Committee did not submit any argument as to the irreparable injury to the movant factor.

The Court finds that Dow Corning has not shown it will suffer irreparable harm if the premium payments were distributed at this time. A movant must provide some evidence that the harm has occurred in the past and is likely to occur again. *Michigan Coalition*, 945 F.2d at 154. As noted by the CAC, Dow Corning cannot show that irreparable harm based on the $130 million cushion projected at the end of the settlement. The Court in its ruling found that the Independent Assessor's analysis was proper regarding the available funding at this time and the funds available at the end of the settlement. There has been no evidence presented that the Independent Assessor's prior analyses were wrong which would have indicated that funding was

not available to all claimants, first and second priority claimants, in the future. The irreparable harm to the movant factor has not been shown.

      **D.**    **Irreparable Harm to Others**

Dow Corning claims that there is negligible harm to claimants who have already received First Priority Payments and would receive an additional second payment in the absence of a stay. The stay would merely preserves the status quo. Dow Corning further claims that the second priority claimants have no right to distribution of Second Priority Payments at any particular time, so there is little hardship to these claimants if a stay was imposed. At most, Dow Corning argues, that the harm to any one individual would consist of a very small amount of interest that could be earned on payments between $1,000 to $5,000.

The CAC responds that the claimants would suffer irreparable harm by the stay because they have been waiting for years to receive Premium Payments that were marketed as a key benefit of the settlement. The CAC claims that claimants are dependent on their settlement recoveries to meet basic living expenses or pay medical bills; others have died waiting to receive Premium Payments. Despite Dow Corning's claim that the loss would be "a very small amount of interest," the CAC argues that the real harm is not having money that they need today. The CAC asserts that Dow Corning's claim that the stay creates "very little hardship" for claimants are "false,

and, indeed, cruel." (ECF No. 1373, PageID.22287) The CAC further asserts that when the payments were initially made by the Finance Committee, there was no negative effect on the Trust's solvency. Meanwhile, the CAC claims that the remaining claimants die waiting for their full relief and that those who live to receive their full settlements are harmed irrevocably by the delay since they will not receive interest or cost-of-living adjustments.

The Finance Committee noted in its response that the Sixth Circuit's previous reversal caused distress and upset among claimants and that the reversal interrupted the distribution process midstream causing administrative hardship at the Facility, which took months to resolve. The Finance Committee is concerned about the day-to-day operation of the SF-DCT, as well as ensuring a fair claims payment process for all Claimants. It claims that the experience from the last distribution of premium payments counsels that a stay pending appeal is the most prudent course of action. Although the Finance Committee is the proponent of the Second Priority Premium Payment, it recommends that the distribution of second priority payments occur "once there is no possibility for interruption." (ECF No. 1377, PageID.22524)

The Court finds that the CAC has shown that the Claimants who have been waiting for years for the premium payments have been harmed and continue to be harmed by the delay in the payment. Although Dow Corning argues that the

8

Claimants are not harmed because the stay is to preserve the status quo–of not receiving payments–and the harm only consists of a "very small amount of interest" earned on payments between $1,000 to $5,000. The Court finds that even with the "very small amount" that Claimants are waiting for causes harm to the Claimants because many are dependent on that "very small amount." However, the Finance Committee does not argue harm to the Claimants, but argues harm to the SF-DCT of administrative hardship, which this Court finds credible as well.

### E. Public Interest

Dow Corning argues that the public-interest factor supports a stay because the stay preserves the integrity of the Trust to avoid serious danger that eligible persons would not be compensated under the Plan. The CAC argues that public interest strongly defeat a stay because the risk is "wholly speculative" that the funding cap might be reached at the very end of the settlement program. The CAC claims that the public interest in providing promised redress to injured claimants and to preserve public confidence in the ability of the judicial system to implement and administer a settlement effectively and efficiently weighs strongly in the public interest. The Finance Committee did not raise any argument regarding the public interest factor.

Dow Corning and the CAC agreed to the Premium Payment provision in the Plan. The Court agrees that Claimants have been waiting for a long time to receive

the promised premium payments. The public interest is ensuring that the Plan is interpreted and implemented properly.

### F. Balancing the Factors

Weighing and balancing the factors set forth above, the Court finds that in its opinion, Dow Corning has not shown that it is entitled to a stay of the Court's Order granting the Finance Committee's Motion for Authorization to Make Second Priority Payments. However, in light of the more stringent opinion by the Sixth Circuit, Dow Corning may prevail on appeal. Although the harm to the Claimants has been shown by the CAC, the Finance Committee has also raised the harm to the SF-DCT. The delay in receiving the payments by the Claimants is significant. However, the Sixth Circuit has noted that when evaluating harm to either party, even if the injury is substantial, in terms of money, time and energy expended, if there is adequate compensatory or other correctively relief available at a later date, this weighs against a claim of irreparable harm. *Michigan Coalition*, 945 F.2d at 154 (citations omitted). The Finance Committee filed the Motion for Authorization to Make Second Priority Payments, but does not recommend to restart the issuance of the payments until this issue is resolved by the Sixth Circuit. The Finance Committee agrees with Dow Corning that the Court's ruling be stayed. In light of the Finance Committee's agreement to stay the matter pending a ruling on this issue by the Sixth Circuit, the

Court finds that the factors weigh slightly in favor of the stay pending an appeal.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Dow Corning's Motion to Stay the Court's Ruling Granting the Finance Committee's Motion for Authorization to Make Second Priority Payments Pending Appeal **(ECF No. 1361)** is GRANTED.

          s/ Denise Page Hood  
          DENISE PAGE HOOD  
          Chief United States District Judge

DATED: December 4, 2018