### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In Re:

    **Settlement Facility-**
    **Dow Corning Trust.**

                             **Case No. 00-00005**
                             **Honorable Denise Page Hood**

_____/

### MEMORANDUM OPINION AND ORDER REGARDING
### TWO ORDERS TO SHOW CAUSES AGAINST
### ATTORNEY YEON-HO KIM
### AND
### VARIOUS MOTIONS FILED BY THE KOREAN CLAIMANTS

**I.    ORDERS TO SHOW CAUSE AS TO ATTORNEY YEON-HO KIM AS REQUESTED BY THE FINANCE COMMITTEE (ECF Nos. 1352/1368 and ECF Nos. 1387/1388)**

    **A.    Background**

This matter is before the Court on Two Orders to Show Cause for Attorney Yeon-Ho Kim to Show Cause Why He Should Not Be Sanctioned and Held in Contempt and for Attorney Yeon-Ho Kim to Show Cause Why He Should Not be Sanctioned and Held in Contempt as to Attorney Fees. Attorney Kim has filed responses to each of the Show Cause Orders.

The Settlement and Fund Distribution Agreement (SFA) provides that the funds distributed by the Settlement Facility are in the custody of the Court until they are paid to and actually received by the Claimant. SFA § 10.09. The Finance Committee

of the Settlement Facility - Dow Corning Trust seeks sanctions against Attorney Kim.

## B.     Contempt Standard

There are two types of contempt:   criminal and civil.   The real distinction
between criminal and civil contempt is the nature of the relief sought and the purpose
of that relief.   *Penfield Co. v. SEC,* 330 U.S. 585 (1947).   A contempt proceeding is
civil if the purpose is "remedial" and intended to coerce the person into doing what
the person is supposed to do.   *Shillitani v. U.S.*, 384 U.S. 364 (1966).   Civil contempt
is to coerce future compliance with the order and to compensate the opposing party
for the party's violation of an order.   *United States v. Bayshore Associates, Inc.*, 934
F.2d 1391, 1400 (6th Cir. 1991).   Remedial or compensatory action is essentially
backward looking, seeking to compensate the complainant through payment of money
for damages caused by past acts of disobedience.   *Garrison v. Cassens Transport Co.,*
334 F.3d 528, 543 (6th Cir. 2003)(quoting *Latrobe Steel Co. v. United Steelworkers,*
545 F.2d 1336, 1344 (3d Cir. 1976)).   Wilfulness is not a necessary element of civil
contempt.   *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1948); *TWM Mfg.
Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).   The burden of proof in a
civil contempt proceeding is on the party seeking a contempt order but need not be
beyond a reasonable doubt.   *Int'l Union, United Mine Workers of America, v. Bagwell,*
512 U.S. 821, 827 (1994).   Civil contempt sanctions, or those penalties designed to

compel future compliance with a court order, are coercive sanctions and avoidable through obedience. *Id.* at 827. Civil sanctions may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. *Id.*

If the purpose is to vindicate the court's authority by using "punitive" measures or punishing the wrongdoer, the proceeding is one for criminal contempt. *Garrison,* 334 F.3d at 543. Criminal contempt is a crime and the penalties, including imprisonment and noncompensatory fines, may not be imposed without the protections of the Constitution required in criminal proceedings. *Int'l Union, United Mine Workers of America,* 512 U.S. at 826, 838. The rules governing criminal contempt are found in Rule 42(b) of the Rules of Criminal Procedure. For "serious" criminal contempt proceedings involving imprisonment for more than six months or noncompensatory and excessive fines, protections include the right to a jury trial. *Id.* at 826-27, 838-39.

In order to hold a litigant in civil contempt, the movant must first present "clear and convincing evidence" that shows that the litigant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Electrical Workers Pension Trust Fund of Local Union No. 58 v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003). "Clear and convincing evidence is not a light burden and should not be confused with

3

the less stringent, proof by a preponderance of the evidence." *Id.* "Clear and convincing evidence is 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.'" *Hobson v. Eaton*, 399 F.2d 781, 784 n.2 (6th Cir. 1968)(citation omitted). Once the movant establishes a prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he or she is *presently* unable to comply with the court's order by showing categorically and in detail why he or she unable to comply with the court's order. *Elec. Workers,* 340 F.3d at 379. A court must evaluate whether the contemnor took all reasonable steps within his or her power to comply with the court's order.  *Id.*

### C.    OSC as to Attorney Kim regarding Claim Payment Checks

The Finance Committee asserts that Attorney Kim cashed claim payment checks intended for 88 Claimants, failed to provide updated address information for the Claimants, failed to provide proof of distribution claim funds to the Claimants, and failed to return claim funds that were not distributed to Claimants.  Attorney Kim is the attorney-of-record representing a number of Claimants in Korea.

After determining that 148 Claimants represented by Attorney Kim had allowed

4

Claims, the SF-DCT sent claim payment checks to his law office for distribution to those Claimants.  Award notification letters were mailed directly to the 148 Claimants, and 88 letters were returned undeliverable, with no forwarding addresses.  The SF-DCT asserts that Attorney Kim ignored SF-DCT's requests for updated addresses. Counsel for the Finance Committee made a written request for updated addresses for the 148 Claimants on December 20, 2017.  Attorney Kim responded on January 3, 2018 providing addresses for 60 Claimants, therefore, 88 Claimants continue to have invalid addresses.  Attorney Kim has not returned any of the funds.

Attorney Kim responds that he sent several emails to the Claims Administrator asking for the payment of $5 million pursuant to a settlement agreement[1] between the Finance Committee and Attorney Kim, yet the payment was not made.  Attorney Kim claims that the SF-DCT mailed the individual checks to him.  Attorney Kim cashed those checks and distributed the funds to any Claimant who asked for payment.  The SF-DCT then mailed more individual checks to Attorney Kim, but this time, he returned the checks to the SF-DCT via FedEx.

On May 16, 2017, Attorney Kim received a letter from the SF-DCT asking to

---

[1]The Sixth Circuit Court of Appeals affirmed this Court's Order (ECF No. 1461) denying the Korean Claimants' motion to enforce a mediation and draft memorandum agreement between the Finance Committee and the Korean Claimants.  (ECF No. 1537, Sixth Circuit Opinion, Case No. 18-2446)

return funds if the Claimants could not be located.  Attorney Kim sent a letter to the

SF-DCT on June 8, 2017 indicating the Korean Claimants did not want their addresses

updated and that under Korean laws, this personal information is protected.  Attorney

Kim indicated he has contact with the Claimants because he has their phone numbers.

He then received a letter from the Claims Administrator on June 21, 2017 indicating

the SF-DCT required current addresses, otherwise the Claims would not be processed.

Attorney Kim sent a letter to the Claims Administrator on July 28, 2017 indicating he

did submit their addresses in their initial Claims.  He then requested to withdraw the

cancellation of the proof of manufacturer approvals and respect the mediation result.

On December 21, 2017, Attorney Kim then received a letter from the Finance

Committee's counsel indicating addresses be provided within 15 days of the date of

the letter or return the payments.  Attorney Kim sent a letter to the Finance

Committee's counsel on December 20, 2017 indicating he will update the addresses,

but needed an extension to February 20, 2018.  On December 22, 2017, the Finance

Committee's counsel indicated it did not agree to the February date, but that Attorney

Kim must so respond by January 4, 2018.  Attorney Kim asserts he updated the

addresses on January 3, 2018 via FedEx to counsel for the Finance Committee.

Because he submitted the updated addresses for all 148 Claimants, Attorney

Kim asserts there is no basis for the motion.  Attorney Kim claims that the Finance

Committee is liable under a mediation agreement in the amount of $5 million. Attorney Kim further responds that he has paid 72 of the 88 Claimants the Finance Committee claims he has not paid.

The Finance Committee replied that Attorney Kim did respond on January 3, 2018, but that as to 88 Claimants, he only noted "not changed" as to the addresses. The Finance Committee asserts that as to these 88 Claimants, they have not received their claim payments. The Finance Committee seeks a return of $370,500 distributed as Claim payments.

Applying the standard set forth in *Electrical Workers Pension Trust Fund* (the case cited by the Finance Committee in its brief)*,* the Court finds that the Finance Committee has not met its initial burden of presenting "clear and convincing evidence" that the litigant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." 340 F.3d at 379. As acknowledged by the Finance Committee, at the time the instant motion was filed, there was no court order which required Attorney Kim to act on any matter, specifically to provide addresses. In any event, it appears that Attorney Kim provided addresses on January 3, 2018. The Finance Committee has not established a prima facie case that Attorney Kim has violated a court order at the time the Finance Committee filed the instant motion.

7

**D.     OSC as to Attorney Kim re Attorney Fees**

The Finance Committee seeks sanctions against Attorney Kim for charging Claimants unauthorized and excessive amounts in fees and expenses. The Finance Committee claims that Attorney Kim has a practice of charging 38% of the award as fees. Exhibit B, Annex A to the SFA, Art. IX, § 9.01 provides the fees an attorney may seek from an award: 1) 10% of the first $10,000; 2) 22.5% of the next $40,000, and 3) 30% in excess of $50,000. As to Class 6.1 Claimants, the fees are:  1) 10% of the first $6,000; 2) 22.5% of the next $24,000, and 3) 30% in excess of $30,000.

A Claimant raised a concern regarding the fees with the SF-DCT and in response, a March 13, 2017 letter was sent to Attorney Kim. He responded that he had a "special agreement" with the Claimant and that it was inappropriate for the SF-DCT to be involved in fee disputes. The SF-DCT sent another letter on June 21, 2017 to Attorney Kim regarding the 38% fee and the $200 filing fee he charged to his clients. Attorney Kim responded explaining his fees and expenses, and also maintaining his position that it was "inappropriate" for the SF-DCT to seek additional documentation.

Attorney Kim responds that he did not charge 38% to his Claimants and that he charged from 10% to 22.5% for attorney fees and 5% for expenses. He claims he has spent nearly $1 million as chargeable expenses under Q11-4 to the Claimant

8

Information Guide from 1994 until now.  He lists many of his travel and other expenses.  Attorney Kim asserts he has charged the appropriate fees and expenses.

Applying the standard set forth in *Electrical Workers Pension Trust Fund* (the case cited by the Finance Committee in its brief)*,* the Court finds that the Finance Committee has not met its initial burden of presenting "clear and convincing evidence" that the litigant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." 340 F.3d at 379.  As acknowledged by the Finance Committee, there is no court order which required Attorney Kim to act on any matter, specifically to provide certain documentation regarding his fees and expenses schedule. The Finance Committee, at this time, has not established a prima facie case that Attorney Kim has violated any court order regarding fees.

## II.   CROSS MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH RESPECT TO THE FINANCE COMMITTEE FILED BY THE KOREAN CLAIMANTS (ECF No. 1357)

The Korean Claimants seek to hold the Finance Committee in contempt and be sanctioned for failing to pay the $5 million in the settlement agreement between Attorney Kim and the Finance Committee.  The Korean Claimants assert that Attorney Kim and the Finance Committee chose Professor Francis McGovern as the sole mediator regarding their claims before the SF-DCT.  A mediation conference was held

in Washington, DC on August 10, 2012.  Attorney Kim claims he accepted the counter-offer of $5 million.  A verbal agreement was consummated between Attorney Kim, David Austern and Ann Phillips.  Attorney Kim signed the agreement drafted by David Austern and Ann Phillips.  Attorney Kim asserts the Finance Committee failed to execute the payment of $5 million.  A Motion for Recognition and Enforcement of Mediation was filed by the Korean Claimants on December 15, 2016. The Finance Committee asserts no agreement was executed, which Attorney Kim claims is untrue.

The Finance Committee claims this issue, which was before the Court at the time the instant motion was filed, cannot be raised in an Order to Show Cause.  The document at issue is an unsigned draft which was never approved nor executed by the Finance Committee. There is no settlement agreement to be enforced argues the Finance Committee.

Attorney Kim submitted a copy of the draft Memorandum of Understanding. He claims that because he signed the agreement and it was drafted by the Finance Committee, the agreement is valid and enforceable.

Dow Corning submits a response that asserts that the instant motion is a duplicate of an earlier motion filed by Attorney Kim.  As noted by Dow Corning in its response to Attorney Kim's earlier motion, the Plan does not provide for a bulk

resolution of claims and therefore the SF-DCT would not have the authority to enter into such an agreement.

As the instant motion is for an Order to Show Cause directed to the Finance Committee, the Court applies the standard set forth in *Electrical Workers Pension Trust Fund.* The Court finds that Attorney Kim has not met his initial burden of presenting "clear and convincing evidence" that the litigant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." 340 F.3d at 379. Attorney Kim has not shown that there was a court order which required the Finance Committee to enter or to enforce the settlement agreement that Attorney Kim alleges is valid. Attorney Kim has not established a prima facie case that the Finance Committee has violated any court order regarding any settlement agreement. In any event, as noted above, this Court and the Sixth Court of Appeals have ruled that there was no valid settlement agreement between the Finance Committee and the Korean Claimants.

## III. KOREAN CLAIMANTS' MOTION FOR EXCLUSION OF DOW CORNING FROM THE CROSS MOTION FILED BY KOREAN CLAIMANTS (ECF No. 1378)

The Korean Claimants seek to exclude Dow Corning and the Claimants' Advisory Committee from responding to the Motion for Order to Show Cause as to the Finance Committee regarding the settlement agreement since they are not parties

to the settlement agreement.

Dow Corning and the CAC respond that they have the right under the Plan and other documents to be heard in any matter.

The Court agrees that Dow Corning and the CAC have the authority to be heard in any matter relating to the Plan and the SFA.  (SFA, § 4.09)  Dow Corning and the CAC are signatories to the Joint Amended Plan of Reorganization.  The Korean Claimants' Motion to Exclude Dow Corning and the Claimants' Advisory from responding to any motion is denied.

## IV.  KOREAN CLAIMANTS' MOTION FOR EXTENSION OF DEADLINE FOR FILING CLAIM (ECF No. 1586)

The Korean Claimants seek an extension of the June 3, 2019 Claim Deadline Establishing Final Cure Deadlines, Revised Claim Review Procedures and Appeal Deadlines set forth in Closing Order 1.  They argue that they were informed on July 25, 2018 of the deadline, but that more than four hundred Korean Claimants have lost the opportunity to submit their claims by the June 3, 2019 deadline because the Sixth Circuit Court of Appeals did not issue its decision affirming this Court's Order Denying the Motion for Recognition and Enforcement of the Mediation Agreement until June 1, 2020.

Dow Silicones, the Debtors' Representatives and the Finance Committee argue

that the Plan itself, not Closing Order 1, established the final filing deadline. Closing Order 1 simply provided guidance to the Settlement Facility to facilitate efficient claims processing and to allow the orderly closure of incomplete and ineligible claims. They further argue that the Korean Claimants did not appeal the entry of Closing Order 1, which was entered in 2018.

On June 1, 2004, the Amended Joint Plan of Reorganization ("Plan") governing the Dow Corning Corporation bankruptcy matter became effective. The Court retains jurisdiction over the Plan "to resolve controversies and disputes regarding interpretation and implementation of the Plan and the Plan Documents" and "to allow, disallow, estimate, liquidate or determine any Claim, including Claims of a Non-Settling Personal Injury Claimant, against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date." (Plan, §§ 8.7.3, 8.7.4, 8.7.5) The Plan Documents pertinent to this matter include the Settlement Facility and Fund Distribution Agreement ("SFA") and the Dow Corning Settlement Program and Claims Resolution Procedures, Annex A to the SFA ("Annex A").

The Settlement Facility-Dow Corning Trust ("SF-DCT") implements the claims of those claimants who elected to settle their claims under the Settlement Program of the Plan. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to

the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid.  (SFA, § 5.01) The process for resolution of claims is set forth under the SFA and corresponding claims resolution procedures in Annex A.  (SFA, § 4.01)  Section 5.05 of the SFA provides that Dow Corning and the CAC may submit joint interpretations and clarifications regarding submissions of claims to the Claims Administrator.  (SFA, § 5.05) The Court may approve an amendment to the SFA after notice and hearing as directed by the Court.  (SFA, § 10.06) Dow Corning and the CAC may jointly amend or modify the Plan, upon order of the Court.  (Plan, § 11.4) There is no provision under the Plan or the or the SFA which allows a claimant to submit an issue to be interpreted by the Court or to amend the Plan.

Article VII of Annex A outlines the general processing protocols for benefit claims. Article VII of  Annex A expressly prescribes the deadlines for submission of benefits claims.  (SFA, § 7.09)  Section 7.09 provides that: (1) Claims for Explant benefits "must be submitted on or before the 10th anniversary of the Effective Date." (SFA, § 7.09(a)(I)).  The tenth anniversary of the Effective Date was June 2, 2014. Claimants must have submitted claims for rupture benefits on or before the second anniversary of the Effective Date.  (SFA, §7.09(c)(I)).  The second anniversary of the Effective Date was June 1, 2006.  Claimants were allowed to apply for disease benefits at any time up to the fifteenth anniversary of  the Effective Date.  (SFA, §

14

7.09(b)(I)).  The  fifteenth anniversary of the Effective Date was June 3, 2019.

Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a).  Section 1127(b) of the Bankruptcy Code is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan.   11 U.S.C. § 1127(b).  "In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a).  "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995).  A court construing an order consistent with the parties' agreement does not exceed its power.  *Id.* at 1228.

The Court has no authority to extend any deadlines set forth under the Plan and agreed to by Dow Corning and the CAC.  As noted above, Dow Corning and the CAC may jointly amend or modify the Plan, upon order of the Court.  (Plan, § 11.4)  There is no provision under the Plan or the SFA which allows the Court to extend the deadlines without the agreement of Dow Corning and the CAC.  The final deadline to submit disease claims was established when the Plan was agreed to by the parties,

which became effective on June 1, 2004.  Closing Order 1, entered in 2018, did not change the final disease claim deadline.  The Korean Claimants' Motion for Extension of Deadline for Filing Claim must be denied.

## V.    CONCLUSION

For the reasons above,

IT IS ORDERED that the Motion for Order to Show Cause as to Attorney Yeon-Ho Kim Why He Should Not be Held in Contempt/Sanctioned filed by Finance Committee **(ECF Nos. 1352/1368)** is **DENIED**.  However, parties, claimants and their counsel are bound by the Closing Orders entered by the Court in this matter.

IT IS FURTHER ORDERED that the Motion for an Order to Show Cause as to Attorney Yeon-Ho Kim as to Attorney Fees Why He Should Not be Held in Contempt/Sanctioned filed by Finance Committee **(ECF Nos. 1387/1388)** is **DENIED**.

IT IS FURTHER ORDERED that the Korean Claimants' Cross Motion for an Order to Show Cause **(ECF No. 1357)** is **DENIED**.

IT IS FURTHER ORDERED that the Korean Claimants' Motion to Exclude Dow Corning, Debtor's Representatives and the Claimants' Advisory Committee from responding to the Motion for OSC re Finance Committee **(ECF No. 1378)** is **DENIED**.

IT IS FURTHER ORDERED that the Korean Claimants' Motion for Extension of Deadline for Filing Claims **(ECF No. 1586)** is **DENIED**.

IT IS FURTHER ORDERED that the Korean Claimants' Motion to Expedite Hearing and Relief **(ECF No. 1644)** on the Motion for Extension of Deadline for Filing Claims is **DENIED as MOOT**, the Court having ruled on the motion as set forth above.

S/DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: August 12, 2022

17