## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE: SETTLEMENT FACILITY -
DOW CORNING TRUST,

SETTLEMENT FACILITY MATTERS.

_____/

Case No. 00-00005

Hon. Denise Page Hood

## ORDER REGARDING MOTION TO CLARIFY CLOSING ORDER 5's DEADLINE FILED BY MAXINE LOUISE SWAIM (ECF No. 1718) AND MOTION FOR JOINDER OF CLAIMANTS ADVISORY COMMITTEE IN MOTION OF CLAIMANT MAXINE LOUSE SWAIM'S COUNSEL TO CLARIFY CLOSING ORDER 5's DEADLINE (ECF No. 1720)

## I.    BACKGROUND

This matter is before the Court on Claimant Decedent Maxine Louse Swaim's Counsel's ("Claimant Swaim's") Motion to Clarify Closing Order 5's Deadline for Qualifying Claimants to Confirm Addresses and Submit Estate Documents, with a joinder filed by the Claimants Advisory Committee ("CAC"). A response and reply have been filed.

On June 13, 2022, the Court entered Closing Order 5, "Notice that Certain Claims Without a Confirmed Current Address Shall be Closed and Establishing Protocols for Addressing Payments for Claimants in Bankruptcy."  ECF No. 1642. Closing Order 5 was stipulated and agreed to by the Debtor's Representative and

Counsel for Dow Silicones Corporation (formerly Dow Corning Corporation) and the CAC.  *Id.* at PageID.28805.

Closing Order 5 is part of a series of Closing Orders for the purpose of facilitating and completing the operations of the Settlement Facility-Dow Corning Trust ("SF-DCT") and assuring efficient final distribution of payments as specified under the Plan.  *Id*. at PageID.28800.  After employing various methods to verify addresses for claimants qualified for payments, there remained unverifiable claimant addresses which were designated by the SF-DCT as having a "bad address."  *Id*. at PageID.28803.  To facilitate closure and to preserve assets for distribution, the Court directed the SF-DCT employ the mechanism previously authorized by the Court in Closing Order 3.  Specifically, the parties agreed in Closing Order 5, Section B.6:

> 6.  To further assure an orderly closing and to preserve assets, it is appropriate to establish a deadline by which the claims identified in paragraphs 8 and 9 above will be closed permanently. The Settlement Facility's data shows that the vast majority of responses to the verification mailings are received within 4 weeks of the verification mailing. Accordingly, to facilitate closure and to preserve assets for distribution, the Settlement Facility is directed to employ the mechanism previously authorized by the Court in Closing Order 3. The Settlement Facility shall post on its website a list of the SID numbers (claimant identification numbers) for those claimants who have been identified as having a "bad address" and those who have not responded to the verification mailing on or before the date that is four weeks after the mailing to those claimants. *The Settlement Facility shall maintain this list on its website for 90 days.* If a claimant responds on or before the end of that 90-day period, the SID number

2

shall be removed from the posted list and the Settlement Facility will proceed to finalize processing or payment of the claim as appropriate. *If the claimant does not respond on or before the end of the 90-day period, the claim shall be permanently closed.*

*Id.* at PageID.28803-.28804 (italics added).

Closing Order 5 gave the SF-DCT the discretion as to when to post the list on its website. On June 19, 2022, pursuant to Closing Order 5, the SF-DCT posted a list on its website of the claimant identification numbers identified as having a bad address. ECF No. 1721, PageID.33613. The SF-DCT's website advised that the final day to submit an address verification was September 17, 2022 (the end of the 90-day period during which the list is maintained on the SF-DCT's website). *Id.*, PageID.33618. The CAC's website and newsletter publicized the September17, 2022 deadline. *Id.* at PageID.33614, PageID.33620, PageID.33622.

On November 29, 2021, the SF-DCT sent Address Verification Letters to Claimant Swaim and to Swaim's counsel pursuant to Closing Order 2. The SF-DCT did not receive a response to the request for address verification. *Id.* at PageID.33615. Pursuant to Closing Order 4, an audit survey was sent to Swaim's counsel, which was returned to the SF-DCT with no information about the funds due to Claimant Swaim. *Id.* Claimant Swaim's SID was included in the SF-DCT website posting on June 19, 2022 as required under Closing Order 5. *Id.*

3

Swaim's counsel submitted a Proof of Lien form for attorney fees/expenses for Claimant Swaim on September 14, 2023, noting that counsel was unable to locate Claimant Swaim.  *Id.*  On September 19, 2022, two days after September 17, 2022 deadline to submit address verification per the SF-DCT's website, Swaim's counsel submitted a document providing a verified address for Claimant Swaim's estate representative, along with probate documents and asked to withdraw the previously submitted lien.  *Id*. at PageID.33615-.33616, PageID.33632.  The SF-DCT responded on September 21, 2022 to Swaim's counsel, stating, "This information is late, sent or postmarked after the deadline of September 17, 2022. With Closing Order #5, the Court has ordered that claims will be denied and permanently closed without payment if the SF-DCT does not receive a current address for the claimant ( or the associated Lien) on or before the before the end of the 90-day period, which was September 17, 2022. The Claim is Closed and your request cannot be processed."  *Id*. at PageID.33616, PageID.33632. Swaim's counsel on September 21, 2022 emailed back the SF-DCT stating, "No, it's not. The deadline was on a Saturday so it defers to Monday.  I confirmed this with CAC and they were calling to advise you. Please confirm."  *Id*. at PageID.33616, PageID.33635.  No appeal to the appeals judge as to the denial of the claim was made by Swaim.  *Id*. at PageID.3316.

## II.    SUMMARY OF PARTIES' ARGUMENTS

Claimant Swaim seeks clarification of the time deadline set forth in Closing Order 5 which directed the SF-DCT to post a list of Claimants who had qualified for payments but had not responded to prior requests to confirm their addresses. Claimant Swaim asserts that Closing Order 5 set a 90-day deadline following the SF-DCT posting for Claimants to contact the SF-DCT, or the claims are permanently closed.   The 90-day deadline fell on a Saturday, September 17, 2022. Claimant Swaim asserts that under Rule 6(a) of the Rules of Civil Procedure and the Amended Joint Plan of Reorganization of Dow Corning Corporation ("Plan"), a claimant's response filed on the next business day, Monday, September 19, 2022, would be timely.   Relying on this rule, Claimant Swaim contacted the SF-DCT on Monday, September 19, 2022.   The SF-DCT informed Claimant Swaim's counsel that   the response made on September 19, 2022 was untimely and that any files by claimants who did not respond by Saturday, September 17, 2022 would be permanently closed.   Claimant Swaim asserts that the Finance Committee indicated it would adhere to the September 17, 2022 deadline.

The CAC's Joinder agrees with Claimant Swaim that the deadline to respond to Closing Order 5 was Monday, September 19, 2022, based on Fed. R. Civ. P. Rule 6(a), the language in Section 3.02(c)(I) of Annex A To Settlement Facility

And Fund Distribution Agreement ("Annex A"); and Question and Answer 9-12 in the Claimant Information Guide (Class 5 and 6.1).   The CAC argues that the Tort Claimants' Committee in the Dow Corning bankruptcy expressly bargained to include the language and intent of Rule 6(a)(1) in the Plan as it applies to deadlines.   The rule es expressly incorporated in the Plan Documents: "If the Election Deadline or any deadline in the Claims Resolution Procedures falls on a Saturday, Sunday or federal holiday, the next business day shall be the applicable Deadline." Annex A, § 3.02(c)(1).   The Claimant Information Guide sent to all claimants in 2003 further provides that if a deadline falls on a Saturday, Sunday or federal holiday, the deadline is the next business day.   Guide, Q9-12.

The CAC argues that Closing Order 5 did not provide a specific deadline date but left that for the SF-DCT to calculate based on the date it posted the SID numbers on its website.   The SF-DCT posted the SID numbers, with the **specific** deadline date of September 17, 2022, which was 90 days from the date the SF-DCT posted the SID numbers.   However, the CAC claims that the SF-DCT failed to apply the requirements of Fed. R. Civ. P. 6(a)(1), as incorporated in Annex A, which would have made the deadline on Monday, September 19, 2022, since September 17, 2022 was a Saturday.   The CAC received calls and email correspondences from claimants and law firms that their submissions on

September 19, 2022 had been rejected by the SF-DCT as untimely.  The CAC made an inquiry to the SF-DCT as to the application of Rule 6(a)(1).  The SF-DCT indicated it would not recognize Rule 6(a)(1) or the Plan language, and would apply the September 17, 2022 deadline, instead of the September 19, 2022 Monday deadline.  The CAC expressed its disagreement with the SF-DCT's disregard of the Plan language and joins Claimant's Swaim request to clarify the deadline for responses to Closing Order 5.

Dow Silicones and the Debtor's Representatives (collectively, "Respondents") respond that since Claimant Swaim did not appeal the SF-DCT's decision not to accept the information submitted on Monday, September 19, 2022 to the Claims Administrator as required by the Plan, the Court should not consider this motion.  The Respondents further assert that neither Annex A nor the Claimant Information Guides apply to the deadline established by the SF-DCT. They also assert that Fed. R. Civ. P. Rule 6(a) does not apply to the specific deadline set by the SF-DCT.

## III.   ANALYSIS

### A.   Authority to Review Claimant Swaim's Motion

The Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action governs this matter.  *In Re Dow*

*Corning Corp.,* Case No. 95-20512 (E.D. Mich. Bankr.).   The Plan was confirmed in 1999 and became effective on June 1, 2004.

Section 8.7 of the Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the Settlement Facility and Fund Distribution Agreement ("SFA"), and, to enter orders regarding the Plan and Plan Documents.   (Plan, §§ 8.7.3, 8.7.4, 8.7.5)   The Plan provides for the establishment of the SF-DCT, which is governed by the SFA. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan.   (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid.   (SFA, § 5.01) Resolution of the claims are set forth under the SFA and corresponding claims resolution procedures in Annex A.   (SFA, § 4.01)

The Plan establishes administrative claim review and appeals processes for Settling Personal Injury claimants.   Any claimant who does not agree with the decision of the SF-DCT may seek review of the claim through the error correction and appeal process, including a review by the Claims Administrator.   (SFA, Annex A, Art. 8, §8.04) A claimant may thereafter obtain review by the Appeals Judge.   (SFA, Annex A, Art. 8) The Plan provides that "[t]he decision of the

8

Appeals Judge will be final and binding on the Claimant." (SFA, Annex A, § 8.05) Claimants who seek review under the Individual Review Process also have a right to appeal directly to the Appeals Judge. The Plan provides that "[t]he decision of the Appeals Judge is final and binding on both Reorganized Dow Corning and the claimant." (SFA, Annex A, § 6.02(vi)) The Court has held on several occasions that the Plan provides no right of appeal to the Court by claimants who do not agree with the decisions of the SF-DCT, the Claims Administrator and/or the Appeals Judge. *In re Settlement Dow Corning Trust,* No. 12-10314, 2012 WL 4476647, at *2 (E.D. Mich. Sept. 28, 2012). Certain parties to the Plan are able to seek review of decisions "regarding the interpretation and implementation of the Plan." *In re Settlement Facility Dow Corning Trust,* No. 18-1040, 760 F. App'x 406, 412 (6th Cir. Jan. 14, 2019) (citing *In re Clark-James*, No. 08-1633, 2009 WL 9532581, at *2 (6th Cir. Aug. 6, 2009).

Claimant Swaim is a claimant under the Plan and is not a party or signatory to the Plan. A claimant seeking review of a decision regarding a claim before the SF-DCT has no right under the terms of the Plan to seek review before this Court. The Court, therefore, has no authority to review substantive decisions regarding particular claims. *Id.,* 760 F. App'x at 412 (The Sixth Circuit affirmed the Court's

finding that the Korean claimants was not a party to the Plan and the relief sought by the Korean claimants were unavailable under the Plan.).

The SF-DCT informed Claimant Swaim that her response to Closing Order 5 was untimely since it was filed on September 19, 2022, the Monday after the express September 17, 2022 deadline the SF-DCT indicated it would accept updated addresses.   Claimant Swaim did not seek review of the SF-DCT's decision to the Claims Administrator, nor the Appeals Judge as required under the Plan.   There is no provision under the Plan that allows a claimant to appeal directly to the district court, nor seek any advisory opinions by the district court. The Court is without authority to review the decision of the SF-DCT that Claimant Swaim's response was untimely and that her claim was closed.   The Court is also without authority to interpret the Plan language regarding deadlines under Fed. R. Civ. P. Rule 6(a) and the Plan documents as requested by Claimant Swaim because she is not a party to the Plan.

### B.    The CAC's request to interpret the Closing Order 5 deadline

#### 1.    Reconsideration

The CAC, as a party to the agreed to Closing Order 5, seeks interpretation of the deadline set forth in Closing Order 5, and/or the Claims Administrator's authority to apply Closing Order 5 by setting a specific date for the deadline.   See

SFA 4.09(c)(v).  "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation."  *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995).  A court construing an order consistent with the parties' agreement does not exceed its power.  *Id.* at 1228.

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration of non-final orders must be filed within 14 days after entry of the order.  E.D. Mich. LR 7.1(h)(2).  No response to the motion and no oral argument are permitted unless the Court Orders otherwise.  E.D. Mich. LR 7.1(h)(3).  Motions for reconsideration may be brought upon the following grounds:

> (A)   The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B)   An intervening change in controlling law warrants a different outcome; or
>
> (C)   New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).  A motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier.  *Sault Ste. Marie Tribe v. Engler,* 146 F.3d 367, 374 (6th Cir.

1998)(motions under Fed.R.Civ.P. 59(e) "are aimed at *re* consideration, not initial consideration") (citing *FDIC v. World Universal Inc.,* 978 F.2d 10, 16 (1st Cir.1992)).

The Court will not reconsider Closing Order 5 since the CAC's request was filed beyond the 14-day deadline to file such a motion. In addition, the CAC agreed to Closing Order 5 and therefore cannot seek review of the order. The Supreme Court has long recognized that a party may not appeal an order with which it agreed in the court below. *See United States v. Swift & Co.*, 286 U.S. 106, 116–17 (1932); *McCuiston v. Hoffa*, 202 F. App'x 858, 864 (6th Cir.2006); *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir.1991) ("[s]tipulations [of facts] voluntarily entered by the parties are binding, both on the district court and on [the appellate court]".)

## 2. Claims Administrator's Authority

As to the Claims Administrator's authority to set a specific date for the deadline, instead of the 90-day deadline required in Closing Order 5, the Respondents argue that the SF-DCT had the authority and discretion to establish a specific date. The CAC asserts that the Claims Administrator should apply the September 19, 2022 Monday deadline, instead of the Saturday, September 17, 2022 deadline.

The Claims Administrator's authority is set forth in the Plan documents.

Article II states,

> **2.02** ***Management of Claims Resolution.*** The claims resolution functions for Settling Personal Injury Claims shall be administered by a Claims Administrator as described in Article IV. The Claims Administrator shall exercise the powers and obligations set forth in this Settlement Facility Agreement and shall assure the distribution of payments to Claimants in accordance with the terms of this Agreement.

SFA, Art. II, Sec. 2.02.   Article IV, in pertinent part states,

> **4.02 (a)** ***Claims Administrator/Definition of Function.***  ...  With respect to claims administration functions, the Claims Administrator shall be supervised by the District Court. The Claims Administrator shall be obligated by the terms of the appointment to perform such functions and assume such obligations and responsibilies as specified herein. In general, and as specified more fully in this Settlement Facility Agreement and Annex A to this Agreement, the Claims Administrator shall be responsible for: (I) supervising processing of Claims resolved under the terms of this Settlement Facility Agreement and the Claims Resolution Procedures and overseeing all aspects of the Claims Office ... The Claims Administrator shall seek the input and advice of the Claimants' Advisory Committee and the Debtor's Representatives on all matters of mutual concern and as specified at Section 5.05.

SFA Art. IV, Art. Sec. 4.02(a).   "All Settling Personal Injury Claims shall be reviewed, processed and resolved by the Claims Office, which shall be administered by the Claims Administrator."   SFA, Art. IV, Sec. 4.03(a).   "The Claims Administrator shall have discretion to implement such additional procedures and routines as necessary to implement the Claims Resolution

13

Procedures consistent with the terms of this Agreement and subject to the provisions of Section 5.05 of the Settlement Facility Agreement." Art. VI, Sec. 5.01(a). Section 5.05 states,

> **5.05 *Interpretation of Criteria/Consent of Parties.*** The Claims Administrator shall obtain the consent of the Debtor's Representatives and Claimants' Advisory Committee regarding the interpretation of substantive eligibility criteria and the designation of categories of deficiencies in Claim submissions (to the extent such interpretations and designations have not previously been addressed as of February 2003 by the Initial MDL 926 Claims Administrator in connection with the Revised Settlement Program). The Claims Administrator shall consult with and obtain the advice and consent of the Claimants' Advisory Committee and the Debtor's Representatives regarding any additions or modifications to guidelines for the submission of Claims. The Debtor's Representatives and Claimants' Advisory Committee are authorized to provide joint written interpretations and clarifications to the Claims Administrator and the Claims Administrator is authorized to rely on those joint written statements. In the event of a dispute between the Debtor's Representatives and the Claimants' Advisory Committee, the Claims Administrator may determine the issue or apply to the District Court for consideration of the matter. There shall be no modification of any substantive eligibility criteria specified herein or in Annex A through the appeals process or otherwise, except as expressly provided in this Section 5.05 and in Section 10.06 herein.

SFA, Art. V, Sec. 5.05.

Based on the Plan document language, the Claims Administrator has the authority to administer the processing and resolution of claims. The Claims Administrator's discretion is limited as to the eligibility criteria and the designation of categories of deficiencies in Claim submissions set forth in Sec. 5.05. There is

14

nothing in the Plan documents that limits the Claims Administrator's authority to choose a specific date for deadlines that claimants must follow.

The CAC argues that Annex A to the SFA, Sec. 3.02(c) provides that the Claims Administrator must accept address updates on Monday, September 19, 2022, even though the September 17, 2022 was given by the SF-DCT as the deadline.   Sec. 3.02 of Annex A states, "[i]f the Election Deadline or any deadline in the Claims Resolution Procedures falls on a Saturday, Sunday or federal holiday, the next business day shall be the applicable Deadline."   By its terms, this section applies to the Election Deadline and any deadline in the Claims Resolution Procedures, set forth in Annex A.   Section 3.02(c) therefore does not apply to the deadlines set forth in Closing Order 5.

The CAC also argues that the Claimant Information Guide sent to all claimants early in the process supports the interpretation that Section 3.02(c) should apply to any deadlines which falls on a non-business day.   However, the Claimant Information Guide cannot be considered in interpreting the agreements entered into by the CAC, including the Plan, the SFA, Annex A and any agreed to orders.   The Plan documents in this case are governed by New York law. With respect to contract interpretation, New York law provides that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found

within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations. When interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized. *Patsis v. Nicolia*, 120 A.D.3d 1326, 1327, 992 N.Y.S.2d 349, 350 (2014) (citations omitted). "[L]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations. The court is not required to find the language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (alterations omitted) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957)). The Court, therefore, cannot go beyond the language set forth in the Plan documents entered into by the parties, including the Claimant Information Guide. The Court can only look to the language found in Annex A, Section 3.02, as the Court has so interpreted above.

The deadline at issue is set forth by Closing Order 5, which, as noted above, is part of a series of Closing Orders for the purpose of facilitating and completing

the operations of the SF-DCT and assuring efficient final distribution of payments

as specified under the Plan.

Rule 6(a) of the Rules of Civil Procedure states,

**(a) Computing Time.** The following rules apply in computing any
time period specified in these rules, in any local rule or court order, or
in any statute that does not specify a method of computing time.
**(1) Period Stated in Days or a Longer Unit.** When the period is
stated in days or a longer unit of time:
(A) exclude the day of the event that triggers the period;
(B) count every day, including intermediate Saturdays, Sundays, and
legal holidays; and
(C) include the last day of the period, but if the last day is a Saturday,
Sunday, or legal holiday, the period continues to run until the end of
the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a).   If the court issues a date-specific deadline, however, and not

a deadline based on a fixed number of days, Rule 6(a) does not apply. *Violette v.*

*P.A. Days, Inc.*, 427 F.3d 1015, 1018–19 (6th Cir. 2005); *Fleischhauer v. Feltner*,

3 F.3d 148, 150–151 (6th Cir. 1993); *Evans v. Aloisio*, 478 F. Supp. 3d 649, 653

(S.D. Ohio 2020).   Closing Order 5 directed the SF-DCT to,

post on its website a list of the SID numbers (claimant identification
numbers) for those claimants who have been identified as having a
"bad address" and those who have not responded to the verification
mailing on or before the date that is four weeks after the mailing to
those claimants. *The Settlement Facility shall maintain this list on its
website for 90 days.* If a claimant responds on or before the end of that
90-day period, the SID number shall be removed from the posted list
and the Settlement Facility will proceed to finalize processing or
payment of the claim as appropriate. *If the claimant does not respond
on or before the end of the 90-day period, the claim shall be
permanently closed.*

17

ECF No. 1642, PageID.28803-.28804 (italics added).   The SF-DCT posted the list on June 19, 2022.   The SF-DCT's website advised that the final day to submit an address verification was September 17, 2022 (the end of the 90-day period from June 19, 2022 when the SF-DCT posted the list on its website).   ECF No. 1721, PageID.33618.   The post states, "THE COURT HAS ORDERED THAT CLAIMS WILL BE DENIED AND CLOSED WITHOUT PAYMENT IF THE SFDCT DOES NOT RECEIVE A CURRENT ADDRESS FOR THE CLAIMANT BY September 17, 2022." *Id*.

The date to post the list to the SF-DCT website was at the discretion of the SF-DCT.   Here, the SF-DCT posted the list on June 19, 2022.   Closing Order 5 directed the SF-DCT to maintain the list 90 days from the date the list was posted.   The SF-DCT determined that the 90-day period ended on September 17, 2022, and so specifically noted on its website.    The SF-DCT website expressly stated as set forth above that if the SF-DCT did not receive a claimant's current address by September 17, 2022, the claim will be denied and closed without payment.   The claimant could submit the current address by phone or email, which was available 24 hours a day, 7 days a week.   ECF No. 1721, PageID.33614.   The CAC noted the September 17, 2022 deadline on its website and newsletter.    *Id*. at PageID.33614, PageID.33620, PageID.33622.   The Claims Administrator asserted

that beginning June 19, 2022, along with other members of the Finance Committee, and the parties, including the CAC, met nearly on a weekly basis, reported on the status of submissions in response to Closing Order 5 and reiterated the deadline for the submissions.  *Id*. The Claims Administrator further asserted that the CAC nor any other participant in the meetings objected to the September 17, 2022 deadline.  *Id*.  No party raised any issue that the September 17, 2022 deadline fell on a Saturday.   The Court also held quarterly meetings with the parties and no party, nor any Finance Committee member raised any issue regarding the September 17, 2022 deadline, nor sought clarification from the Court that the September 17, 2022 deadline should be extended to September 19, 2022 Monday deadline.   The Court was not aware of the deadline issues until Claimant Swaim filed a motion more than eight months after the claim was denied and closed.   The Court was not aware that the CAC sought clarification of the September 17, 2022 deadline announced by the SF-DCT, and recognized by the CAC, until the CAC filed its Motion for Joinder of Swaim's Motion on June 13, 2023, almost nine months after the September 17, 2022 deadline.

Based on this Court's review of the Claims Administrator's authority and discretion under the SFA and Annex A, the Court finds that the SF-DCT had the discretion to post the list on June 19, 2022, and to determine the 90-day deadline as

September 17, 2022 pursuant to Closing Order 5.   No party disputed the SF-DCT's posted deadline of September 17, 2022.   The Claims Administrator had no knowledge prior to September 17, 2022 that there was a dispute as to its authority to establish the September 17, 2022 deadline so that the Claims Administrator could apply to the court for consideration of the matter prior to enforcing the September 17, 2022 deadline to *all* the claims received after that date. *See*, SFA, Art. VI, Sec. 5.05.   The Court further finds that the CAC agreed to the specific September 17, 2022 date listed by the SF-DCT, in light of the postings of the date on its website and newsletter.   Also, the CAC did not raise the fact that the September 17, 2022 date fell on a Saturday during the meetings with the Finance Committee and the parties and with the Court on the quarterly meetings. A party's conduct can establish waiver and that course of conduct can indicate a knowing waiver.   See, *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 725 (6th Cir. 2006).

The Court finds that the specific date issued by the SF-DCT of September 17, 2022 is specific and unambiguous and must be enforced.   The Court denies the CAC's Motion for Joinder and to interpret the SF-DCT's specific and unambiguous September 17, 2022 deadline to instead apply the next business day date of Monday, September 19, 2022.

20

## IV.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Claimant Maxine Louise Swaim's Motion to Clarify Closing Order 5's Deadline **(ECF No. 1718)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Joinder of Claimants Advisory Committee in Claimant Maxine Louise Swaim's Motion to Clarify Closing Order 5's Deadline for Qualifying Claimants to Confirm Addresses and Submit Estate Documents **(ECF No. 1720)** is DENIED.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED:   July 31, 2024